John LaRue JOHNSON, Appellant,

v.

STATE of Missouri, Respondent.

No. 54260.

Supreme Court of Missouri,
Division No. 2.

June 9, 1969.

Pohlmann & Dieckman, Lloyd F. Dieckman, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Alfred C. Sikes, Asst. Atty. Gen., Jefferson City, for respondent.

PRITCHARD, Commissioner.

Appellant, under Supreme Court Rule 27.26, V.A.M.R., seeks to have three consecutive sentences of ten, ten, and five years on charges of first degree robbery vacated and set aside. Along with these sentences, appellant also attacks a sentence of twenty-five years on a charge of assault with intent to rob (this sentence to run concurrently with the other three). Upon a hearing below, the motions on all four sentences were consolidated, the relief as to the three first degree robbery sentences was denied, but the sentence on the charge of assault with intent to rob was vacated and set aside, and appellant was ordered to be resentenced in accordance with the provisions of § 559.190, RSMo 1959, V.A.M.S. (prescribing a maximum of five years imprisonment for the offense).

The grounds for relief asserted by appellant in the motions are essentially the same: That he was unconstitutionally deprived of effective assistance of counsel at arraignment; that his court-appointed counsel did not render him proper assistance; that he entered his pleas of guilty without understanding the nature of the charges, and the possible ranges of punishments; and that the sentences of ten, ten and five years were based in part upon the twenty-five-year sentence for assault with intent to rob, it being in excess of the maximum sentence authorized by law (a separate ground for relief as to the motion attacking the latter sentence).

The points here on appeal are: "I. Appellant was denied the right of effective assistance of counsel. II. Appellant was denied due process of law in that his pleas of guilty were not understandably made. III. Appellant was denied due process of law in that his sentences were based on an illegally imposed sentence."

At the outset of the hearing the state confessed that the sentence of twenty-five years for assault with intent to rob was based upon an information which did not "allege malice aforethought" and that the sentence should be set aside and appropriate relief be granted appellant.

Appellant testified that he was arraigned on January 11, 1962, without counsel. On February 19, 1962, Mr. Alex Peebles was appointed for him. Mr. Peebles consulted with appellant for approximately fifteen minutes total, once upstairs in the jail and on the morning of sentencing. Mr. Peebles told him that it was his opinion that since he was eighteen years old at the time he could secure appellant a fifteen-year sentence. He told Mr. Peebles that he was not guilty in the assault charge and would like to have a jury trial. He did not see Mr. Peebles again until the morning of sentencing, at which time Mr. Peebles told him that all of his charges were in Judge Stubbs' court, his advice was for appellant to accept the twenty-five year sentence,

and explained to him that if he "bucked the State" on the assault charge all his sentences would be consecutive, and he would have approximately a total of forty or fifty years, and possibly a life sentence on the assault charge. As to possible defenses, Mr. Peebles explained nothing. He did not tell him that the penalty on the three robbery charges went from time in the penitentiary to death. Appellant alleged then and at the hearing below that he was not guilty of the assault, but his testimony was that he never denied his guilt in the robberies, and did not do so at the hearing on the motions.

Appellant further testified that at the time of the sentencing he was eighteen years old, "and in a sense a functionally illiterate." He could not cope with the law and his appointed counsel told him he was too busy to adequately prepare a defense —he was too busy to go to trial. His counsel, Mr. Peebles, did not consult with him in length concerning his charges. He was deprived of assistance of counsel at the preliminary hearing and at arraignment. The "Court at the time of the sentencing did not take into account any of these things, the circumstances, it did not afford me a chance to defend myself against this assault charge, which should have been done, because I feel, I strongly feel that if I had been able to defend myself against this assault charge I would not have received, in the Court's words, I would not have received an amount of sentencing totalling twenty-five years."

During cross-examination, in answer to a question from the court, appellant testified that the fact that he had no counsel at arraignment, when the court entered a plea of not guilty for him, it did not hurt his position. In answer to questions from the state, appellant testified that he had no mental problems that he knew of. He had a preliminary hearing in the assault case, but not in the robbery charges—he waived it himself—his mother had talked to lawyer Phelps who sent word that appellant should do this. His lawyer, Mr. Peebles, came to the jail and first asked if he were guilty. Appellant told him he was guilty of the robbery charges, but not on the assault charge. His defense to the assault charge was that his brother brought (bought?) the pistol after the assault, and appellant not only was not there but had no knowledge of the assault, but had no witnesses.

Mrs. Rosalie Johnson, appellant's mother, testified that she visited her son often while he was in the County Jail. She talked with his lawyer, Mr. Peebles, on the day appellant was sentenced. He told her that he was going to try to get appellant fifteen years, "That would be the smallest," and that he would do his best. Appellant told his mother essentially the same things to which he testifed on this hearing concerning his guilt. Mrs. Johnson regarded Mr. Peebles as a good lawyer, but felt that he had not the chance to look into her son's case.

For respondent, Mr. Alex Peebles testified. He began his practice of law in 1936 and had been a, member of the Missouri Bar for thirty-two years. In the last ten or fifteen years his practice trended toward criminal law, and he participated in the defense of a number of criminal cases, some appointment cases for indigent defendants. He was appointed to represent appellant six and a half years before, but could not remember everything he said. "But I am sure that I went into his case with him, and solely and only for the purpose of trying to do the best job I could for him, and to fulfill my duty to the Court." The only purposes of Mr. Peebles going to the jail would have been to have gone into appellant's various charges and primarily to find out if he was guilty or innocent to find out which way they should go. "Had I talked with him and had he told me that he was not guilty of any of these charges, then I would have prepared a defense, because I would not plead any person guilty who was not guilty. So that —and strictly on my procedure, I will have to say that he must have told me he was guilty or I would not have pled him

guilty. And that is all I can—I can't remember it."

At the time he participated in the plea, Mr. Peebles was under the assumption that the assault charge carried a sentence running to life. He also recalled advising appellant that the robbery charges carried that penalty and even a heavier penalty. He discussed the possibilities, and appellant's future, with appellant and his mother, and they all three decided that the best thing for him to do was to plead guilty, go down to the penitentiary, take whatever sentence he had and work hard to get out of there. Appellant was caught three times, and Mr. Peebles' opinion was: "[I]t would be silly to try three of these cases, because stacked end on end he might never get out, and so we threw ourselves on the mercy of this Court. * * *" As Mr. Peebles recalled the evidence, there was no chance for appellant on any of the cases. He discussed the cases with the prosecution as to possibilities and probabilities, not having any assurances from the court, and calculated that the sentences would be fifteen years, but as it turned out the sentences were twenty-five years (total). He did not recall appellant telling him he was not guilty of the assault charge.

The record shows that at the time the pleas of guilty were entered appellant was present with Mr. Peebles. On each of the charges appellant was told by the court that he was entitled to a jury trial; that if he were found guilty by a jury the punishment might be more or less than that which the court might impose. Appellant answered that he understood this advice. Also, in each of the cases the appellant answered affirmatively to the court's question: "Are you asking that I accept your plea of guilty because you are guilty?"

In each of the cases the prosecuting attorney made a brief statement concerning the facts. In the assault case he stated that appellant, with a pistol in his hand, arrived about closing time at a shop owned by a Mr. Herner. Herner closed the door on appellant's arm, and appellant withdrew it and fired a .38 caliber bullet through the glass. It struck Herner on his right cheek and emerged from the neck below his right ear. If the bullet had struck a fraction of an inch to the left (right?) it would have resulted in Herner's death. The three robberies were committed on the same day by appellant and three accomplices. Mr. Peebles then stated to the court that appellant had not always been bad; he went to high school and almost graduated; he was an athlete; he was in a foster home because of his mother's illness; and he was only eighteen years of age.

The court then stated: "This young man is very fortunate that the victim of the assault didn't die. Each one of these offenses to which he has pleaded guilty carries a penalty up to death in the gas chamber. There is no more vicious offense that I know of than one taking a loaded weapon and pointing it at another human being, threatening to kill in the event his demands are not complied with. And this young man, in spite of his youth, obviously intended what he said when he told his victims over here on these latter robberies if they didn't obey his command he would kill them, because he made an effort to do that in C–31487, and by the grace of the Lord only the man he shot didn't die."

The trial court made findings of fact and conclusions of law with respect to appellant's motions to set aside and vacate his sentences. After arraignment movant's privately engaged counsel withdrew from all cases and Alex Peebles was appointed, "a lawyer with substantial experience in criminal cases to the personal knowledge of this court." The court accepted appellant's pleas of guilty after questioning him as to his understanding of same, that he was entitled to jury trial in each, and that he was requesting the acceptance of pleas because he was guilty of each offense. Movant's court-appointed counsel was fully competent to represent him; that he did not coerce him into entering pleas of guilty; that neither counsel nor anyone

else threatened him with life imprisonment if he did not enter pleas of guilty; and that movant did not tell his court-appointed counsel that he was not guilty of the assault charge. Further found as a fact by the court was that appellant entered his pleas of guilty intelligently with a full understanding of the factual and legal consequences thereof. The court then concluded that appellant was not prejudiced or deprived of any constitutional right because of absence of counsel at preliminary hearing, or absence of counsel at arraignment; that the sentence of twenty-five years was in excess of the maximum penalty provided by law, and must be vacated and a new sentence imposed; and that no right or privilege of appellant, constitutional or otherwise, was in any way violated.

 Appellant first argues that his appointed counsel did not have sufficient time to properly evaluate all of the facets of the four cases, especially the three robbery cases wherein there were codefendants. The record refutes this contention, and the findings of the trial court are supported by the evidence. Appellant definitely told his counsel that he was guilty of the robbery charges, and he even now does not deny that guilt. The penalties for those offenses are severe. In proper representation, counsel consulted with appellant, his mother and with the prosecution as to the possibilities and probabilities of the amounts of sentence. He did not promise, or hold out hope, that the sentences would total only fifteen years. He would only "do his best." Since appellant admitted his guilt of the robbery charges to his counsel, and did not tell him that he was not guilty of the assault charge, it would have served no useful purpose to delve into the facts. Counsel could only be concerned with the penalties, since appellant, his mother and counsel agreed that pleas of guilty would be the best course of action. Counsel's testimony was that the evidence revealed no defenses as he recalled. See and compare State v. Gunther, Mo., 415 S.W.2d 733, where although counsel saw the defendant in jail several times, he ascertained from defendant that he was guilty of the robbery charge; according to counsel, defendant mentioned no witnesses, and told him that he did not want to stand trial. Counsel discussed the case with the prosecution. It was held that under the evidence defendant did not sustain his burden of proving ineffective assistance of counsel, there being no evidence of coercion, misrepresentation or mistake. As to appellant's contention that his appointed counsel saw him only twice for about fifteen minutes total, see Allen v. Rodriguez (C.A. 10th), 372 F.2d 116, 117, where it was said, " * * * '[T]he competence of counsel cannot be determined solely on the basis of the amount of time he spent interviewing his client.' "

 There was, of course, an error in sentencing appellant to twenty-five years imprisonment on the assault charge since the information failed to allege that the assault was "with malice aforethought." This twenty-five year sentence was ordered by the court to run concurrently with the other three consecutive sentences for robbery. Appellant received no more than the total of twenty-five years. When the error was discovered, the sentence for assault was ordered to be modified to the permissible limits by the court. Any prejudice to appellant has been removed. The error was in the sentence, not in the facts of the assault, which facts were fully gone into, with appellant present, at the time of sentencing. There is no evidence to support appellant's contention that the total of twenty-five years sentence was based upon the illegal, or erroneous, sentence for assault. Appellant has, on this hearing, received all the relief he is entitled to in the correction of the latter sentence.

 Before the sentences were imposed, according to appellant's own testimony, his counsel told him that the best he could do on pleas of guilty was the total of twenty-five years. Appellant had his opportunity then to reject that total, and then knew

that the earlier-mentioned fifteen-year total would not be available. There was thus no unwarranted hope held out to appellant, and he was not led to believe, that he would receive only fifteen years. Knowing that he would receive twenty-five years total sentences, appellant entered his plea.

The record is clear that appellant's counsel was fully competent, with much experience in the practice of criminal law, as found by the court. It is not suggested what other counsel might have done other than what Mr. Peebles did under all the facts and circumstances.

■ It is next said by appellant that his pleas of not guilty were not understandingly and knowingly withdrawn and guilty pleas entered. He argues that "It is clear that the appellant did not understand what he was pleading to with respect to the assault with intent to rob charge in that he received an illegally excessive sentence of twenty-five years (Tr. 184), which sentence has since been corrected." As stated above, appellant consulted with his counsel with regard to entering the pleas of guilty. He told his counsel he was guilty of the robbery charges, and according to counsel he did not tell him that he was not guilty of the assault with intent to rob charge. The record shows that appellant could not but have understood the *facts* of the latter charge, they being outlined to the court in appellant's presence. As to this charge the error was made by all concerned as to the sentence to be imposed, which did not exceed the consecutive sentences totaling twenty-five years, and which sentence was corrected in these present proceedings. The erroneous sentence imposed does not relate to appellant's understanding of the charge. His cited case of State v. Williams, Mo., 361 S.W.2d 772, is not in point on its facts. There the plea was equivocal, and there was an indication from counsel that he was not certain of his guilt in that defendant did not know where he was or what he had done with respect to the charged crime. Upon the sentence of death, there being a recommendation of life imprisonment upon which counsel relied, there was an immediate request to withdraw the plea. Here the court did ascertain from appellant his knowledge of his guilt of all four charges, which had been previously explained to appellant by his counsel. The court's finding on this contention is not clearly erroneous.

■ Lastly, appellant contends that the three sentences imposed upon him (for robbery) constitute a denial of due process because they were based in part upon a sentence that was and is wholly void (the twenty-five year sentence for assault with intent to rob). Although there was an early case, Ex parte Page, 49 Mo. 291, which held that a sentence in excess of the statutory limits was void and could not be amended in habeas corpus proceedings, there was thereafter in 1877 a statute enacted, R.S.Mo.1929, § 1496 (now § 532.400, RSMo 1959, V.A.M.S.), providing that no person shall be entitled to the provisions of the chapter on habeas corpus by virtue of a judgment of confinement as to time or place of imprisonment, but it shall be the duty of the court to sentence such person to the proper place of confinement or the correct length of time from and after the date of the original sentence. See LaGore v. Ramsey, Warden, Mo., 126 S.W.2d 1153. 1154. Furthermore, the provisions of Rule 27.26, V.A.M.R., provide specifically that where the sentence was in excess of the maximum authorized by law the court may correct the sentence. This rule, in its effect, accords with the weight of authority that a sentence in excess of that authorized by law is not void, but is merely erroneous. 24 C.J.S. Criminal Law § 1584, p. 576. The comment of the court, at the time of sentencing, that appellant intended his threat to kill if the victims of the robberies did not comply with his demands from the fact that he actually shot Herner, does not show that the three robbery sentences were erroneously based upon the assault sentence. The latter sentence was

not, in any event, void, but was correctable, as was done, in this proceeding.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.