**Harlan FLECK, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 54282.**

Supreme Court of Missouri,
Division No. 2.

July 14, 1969.

Robert G. Duncan, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Christopher S. Bond, Asst. Atty. Gen., Jefferson City, for respondent.

FINCH, Judge.

On April 24, 1963, movant entered a plea of guilty to a charge of murder in the first degree and was sentenced to life imprisonment. Subsequently, he filed a motion to vacate judgment and sentence pursuant to Supreme Court Rule 27.26, V.A.M.R. Counsel to represent defendant in connection with said motion was appointed and

an evidentiary hearing held. The trial court made findings of fact and conclusions of law and denied the motion to vacate, from which action the movant appealed. We affirm.

The first point briefed on appeal is that movant was denied his constitutional right to counsel by the refusal of the magistrate to appoint an attorney for him at his preliminary hearing, and that he was prejudiced as a result. Movant cites the Sixth and Fourteenth Amendments to the Constitution of the United States and numerous decisions of the Supreme Court of the United States relating to the right of a defendant to counsel at all critical stages of proceedings against him. He also cites Art. I, § 18(a) of the Const. of Mo., 1945, V.A.M.S., and certain rules of the Supreme Court of Missouri, particularly Rule 23.03, V.A.M.R.

■ This court on numerous occasions has held that the preliminary hearing in Missouri is not a critical stage of the proceedings and that appointment of counsel for such preliminary hearing is not required. Some of the cases so holding are State v. Peck, Mo., 429 S.W.2d 247; State v. Durham, Mo., 416 S.W.2d 79, and State v. Owens, Mo., 391 S.W.2d 248. These opinions discuss and distinguish decisions of the Supreme Court of the United States such as White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193; Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114, and Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. Our previous decisions recognize that if something happens at the preliminary hearing which infringes on defendant's fundamental rights and may be used against him, that particular preliminary hearing could be a critical stage, but in this instance the movant waived a preliminary hearing and nothing occurred in the proceedings before the magistrate which could have been used against the movant in subsequent proceedings. Consequently, we adhere to our previous view that said proceeding in the magistrate court was not a critical stage which required appointment of counsel.

Movant cites Supreme Court Rule 23.03, V.A.M.R., which provides, among other things, that "the accused shall be allowed a reasonable time to advise with his counsel and shall be permitted to send for counsel if he so desires." Movant contends that the existence of this rule means that counsel must be appointed for an indigent in the magistrate court. A similar contention was made and overruled in the case of State v. Owens, supra.

■ Movant also makes the point that he would not have waived his preliminary hearing if he had had an attorney, because an attorney would not have permitted him to waive the preliminary hearing. Such a contention is speculative and, furthermore, does not show in any way that the movant was prejudiced by reason of the fact that an attorney was not appointed. He also states that he did not know that it is required by statute that evidence at a preliminary hearing in a homicide case must be reduced to writing and signed by the witnesses. The fact that such testimony is required by § 544.370, RSMo 1959, V.A.M.S., to be reduced to writing and signed does not change the situation. Movant has not demonstrated that his constitutional rights have been denied or that he was prejudiced.

Movant's second point is that it was error to deny his motion to vacate "in that his plea of guilty was not voluntary but was the result of coercion, fear and threats of the imposition of the death penalty." While movant's motion and briefs do not specifically so state, this amounts to an effort on his part to withdraw his plea of guilty. Such an application is governed by Supreme Court Rule 27.25, V.A.M.R. Under the provisions of that rule, a plea of guilty may be withdrawn after sentence has been imposed only to correct manifest injustice. As we stated in State v. Mountjoy, Mo., 420 S.W.2d 316, 323: "An application made pursuant to Rule 27.-

after the imposition of sentence to withdraw a plea of guilty is necessarily an attack on the validity of that sentence within the meaning of Rule 27.26, and the procedure to be followed is set forth in that rule as amended and effective September 1, 1967." This necessarily means that movant has the burden of establishing his grounds for relief by a preponderance of the evidence (Rule 27.26(f)), and that, on appeal, "appellate review shall be limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous". Rule 27.-26(j). Crosswhite v. State, Mo., 426 S.W.2d 67.

An evidentiary hearing was held, at which movant and John W. Newhart and John Moore, the two attorneys who represented him when his plea of guilty was entered, testified. Following such hearing, the circuit judge found that movant's plea of guilty to the charge of first degree murder was voluntary and he denied the motion to vacate.

■ The evidence clearly supports the finding by the trial court that movant's plea of guilty was voluntary. Both attorneys who were called as witnesses on behalf of movant testified that the decision by movant to change his plea to guilty was his own. Mr. Newhart testified that he did not advise the defendant to plead guilty, but he did discuss with him the possibilities of either a death sentence or life imprisonment for first degree murder, and that he discussed penalties for other degrees, including manslaughter. Mr. Moore likewise testified that he did not tell Fleck that he should plead guilty, but he did tell him what the possibilities were. Mr. Newhart testified that he told Fleck that it would be an uphill battle to get the jury to believe his story if it was not corroborated by other witnesses, and that there was a possibility that the jury, if it believed the state's evidence that the defendant had gone out to rob the victim and then had shot him, might fix his punishment at death. The evidence disclosed that Fleck had surrendered voluntarily to the sheriff's office after the shooting and that he had turned over his gun to the officers, telling them that he had gone out to rob a Mr. Hanni and that when he attempted to do so he had shot the victim six times. He had purchased the gun a day or so before. The wife of the victim witnessed the shooting and there were others who saw Fleck leave the barn where the shooting occurred. There were no other witnesses to corroborate Fleck's version of the occurrence.

The attorneys told Fleck that the state would not reduce the charge to second degree murder, and that the most that the prosecuting attorney had said he would do was that he would not oppose a life sentence in the event of a plea of guilty. The attorneys testified that members of the defendant's family were present at most of the discussions pertaining to whether a plea of guilty should be entered.

Up until trial, movant had insisted on defending against the charge and a plea of not guilty was entered. Mr. Newhart had several conferences with movant and he prepared the case for trial. On the date when the case was set, both Mr. Newhart and Mr. Moore were present and the trial was commenced. The morning was spent qualifying a jury panel and the court adjourned for lunch when they ran out of veniremen because of a considerable number of prospective jurors who were excused. A number of them apparently were excused because they had stated they would not impose a death sentence under any circumstances at all.

During the noon hour, according to testimony of the attorneys, the movant had conferences with members of his family and changed his mind about whether to stand trial. He informed the attorneys before court reconvened that he desired to withdraw his plea of not guilty and enter a plea of guilty. This was done and the trial court, in his findings, states that Judge Higgins then advised the defendant of the alternatives that the court could assess,

those being life sentence or death, but that the defendant still persisted in his desire to enter a plea of guilty.

The testimony of movant at the hearing varied in several respects from that of the two attorneys who had represented him. He testified, for example, that the attorneys had urged and insisted that he plead guilty, and that on the morning of the trial, Mr. Newhart told him that he would withdraw if the defendant did not plead guilty. The attorneys testified to the contrary. The court obviously believed the testimony of the two attorneys on these and other points and disbelieved the testimony of the movant. Movant did not call members of his family to corroborate his version of what occurred on that date, and his testimony on these points was wholly uncorroborated.

■ The evidence does not show that movant's plea of guilty was the result of coercion, fear, and threats of the imposition of the death penalty. Of course, the attorneys had advised him that the jury might impose the death penalty and, the defendant was faced with the choice of whether to stand trial and risk possible imposition of the death penalty or to enter a plea of guilty in the hopes that under such circumstances the trial court would fix his punishment at life imprisonment. Such dilemma, however, does not amount to coercion of the sort which means that his plea of guilty is coerced and subject to collateral attack. In that connection, what this court said in State v. Carter, Mo., 399 S. W.2d 74, 78, is pertinent:

"It might be said that every plea of guilty is entered pursuant to a form of 'coercion,' depending upon the definition assigned to that word. In every case the defendant is entitled to plead not guilty and place upon the state the burden of proving (and convincing a jury) that he is guilty of the offense charged beyond a reasonable doubt. The defendant is faced with the choice (some might call it a dilemma) of entering a plea of guilty and taking his chances with the court as to punishment or risking a trial of the cause before a jury. Yet when the defendant is capable of understanding the situation before him and does understand it, the judgment entered pursuant to such plea of guilty certainly is not subject to collateral attack. There was no coercion or duress in the sense of being wrongful."

In the earlier case of State v. Freedman, Mo., 282 S.W.2d 576, the defendant asserted that the prosecuting attorney had advised him that if he went to trial he would be charged under the Habitual Criminal Act, and that consequently his plea of guilty was entered under duress and coercion. This court, with respect to that contention, said, l.c. 581: "While the record clearly shows that appellant was confronted with the dilemma of either entering a plea of guilty or being tried upon the charge in question before a jury, the record wholly fails to show that such alleged duress was such as would nullify the judgment and sentence entered by the court upon the plea of guilty. The compulsion under which appellant acted was neither unlawful, nor exercised for an unlawful purpose. Appellant exercised his own volition and choice with a full knowledge of the facts in entering a plea of guilty and taking his chances with the court as to punishment, rather than risking a trial of the cause before a jury." See also State v. Maloney, Mo., 434 S.W.2d 487, 494.

We hold that the findings, conclusions and judgment of the trial court herein are supported by the evidence and are not clearly erroneous. Movant did not demonstrate that withdrawal of his guilty plea is necessary to correct manifest injustice.

Judgment affirmed.

All of the Judges concur.