Charles Miller MOORE, Appellant,

v.

STATE of Missouri, Respondent.

No. 55463.

Supreme Court of Missouri,
Division No. 1.

Jan. 11, 1971.

Irvin Dubinsky, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Thomas H. Stahl, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Appeal from denial of relief in proceeding under Supreme Court Rule 27.26, V.A.M.R.

On May 18, 1961, three men held up a drug store in St. Louis. A delivery boy was killed in the course of the crime. On May 29, 1961, Lloyd Leo Anderson was arrested for the robbery and murder. A second participant in the crime was killed at the time of the arrest of Anderson. Appellant Charles Miller Moore was also arrested for the crimes and he and Anderson were jointly charged with robbery in the place first degree with a deadly weapon and murder in the first degree.

Appellant's brother employed Mr. James Rankin, an experienced criminal lawyer, to defend appellant and Anderson who was the son of appellant's sister. Rankin appeared with appellant in the Court of Criminal Correction on a preliminary hearing. On June 16, 1961, he appeared with appellant at arraignment on the two charges and entered a plea of not guilty.

Rankin represented Anderson at his jury trial, which began September 23 and ended September 28, 1961, with a verdict of guilty of first degree murder, with punishment of death. Anderson's conviction was affirmed by this Court. State v. Anderson, Mo., 386 S.W.2d 225. The sentence of death was executed. On September 29, 1961, Rankin appeared with appellant before Judge Robert Aronson of the St. Louis Circuit Court. Appellant withdrew his pleas of not guilty to the two charges against him, and entered a plea of guilty to each. On that date, he was sentenced to life imprisonment on each charge, the sentences to run consecutively.

In August, 1968, appellant sought a copy of the transcript of proceedings on his plea

882

of guilty. The court reporter who recorded the proceedings was ill and Judge Aronson was unable to find anyone who could read the reporter's shorthand notes. The reporter subsequently died, as did Judge Aronson and Mr. Rankin before the hearing on this case.

Appellant's 27.26 motion was originally filed March 25, 1969. Subsequently, an amended motion was filed. Relief was sought on the grounds that his plea of guilty was not voluntary because of coercion and promises of a parole by his attorney and that the plea was not knowingly and understandingly made. The motion also alleged ineffective assistance of counsel.

Testifying on the motion, appellant stated that he was thirty-six years of age at the time of the crime; that he had completed the sixth grade of school at the age of seventeen. He testified that he first met Mr. Rankin at the preliminary hearing, at which time Rankin told appellant that appellant's brother had employed him. At that time, Rankin told him to plead not guilty but made no inquiry of appellant as to his role in the crime. Appellant testified that he next saw Rankin in the city jail where Rankin told him that they had just given Anderson the death penalty and that the same thing was in store for him if he proceeded to a jury trial. He said that Rankin told him that he could get him a life sentence, under which he could get a parole "in approximately one third of my life span."

The next day, appellant says, he appeared in court and at Rankin's direction pleaded guilty. According to appellant, when the case was called, Mr. Rankin said, "Your Honor, my client wishes to change * * * his plea from not guilty to guilty." The judge asked appellant if he knew what he was doing, and, according to appellant, Mr. Rankin said, "Yes, Your Honor. He has been advised of everything." Then the circuit attorney stated: "Your Honor, this man is not actually involved in the actual killing * * * we have the

others that are." He recommended a life sentence on each of the charges.

Right after that, according to appellant, the judge sentenced him to two consecutive life sentences.

Appellant testified that Judge Aronson directed no inquiries to him, except for an inquiry as to whether he understood the proceedings. According to appellant, Rankin nudged him and he nodded his head "Yes." Appellant said that Rankin never advised him that he had a right of trial by jury. He said that he did not understand at the time that he received two sentences. According to appellant, he thought that he was charged only with robbery. Nor did he understand the meaning of "consecutive." Appellant said that the proceedings before Judge Aronson took about thirty minutes.

Appellant testified that he had no discussion with Rankin about trying the case or about any possible defense, that the only conversation Rankin had with him before entry of the plea was at the preliminary hearing and in the city jail the day before the entry of the plea.

Appellant testified that his niece and sister visited him in jail before he entered his plea of guilty. They told him that Anderson had just received the death penalty and that it would be best to do what Mr. Rankin told him to do.

Robert Moore, brother of appellant, testified that he employed Rankin to represent Anderson and appellant and paid him $2,500 for his services. He testified that Rankin told him that the best thing for appellant to do would be to plead guilty, and try to get a life sentence under which he could get paroled after a certain number of years. The witness testified that he encouraged appellant to follow Rankin's advice. He said that when he discussed Rankin's recommendation with appellant, "he said the life sentence was better than a death sentence." The witness said that he didn't see appellant after Anderson was found guilty and before appellant was sen-

tenced. He was not in court when appellant was sentenced.

The state offered as a witness the assistant circuit attorney who appeared on behalf of the state at appellant's sentencing. He had no specific recollection of any conversations that occurred in the courtroom in connection with the sentencing.

Former Circuit Judge John Bantle, First Assistant Circuit Attorney at the time of the hearing, testified that Rankin "had the reputation of being probably, certainly one of the most competent attorneys specializing in the trial of criminal cases during the time he practiced law here in the City of St. Louis."

Judge Bantle also testified that as an assistant circuit attorney he had handled criminal cases before Judge Aronson in 1946, and was in almost daily contact with Judge Aronson during that year. He testified that since that time he had been in Judge Aronson's court on numerous occasions when he took pleas of guilty. According to Judge Bantle:

"Well, it was his practice even that far back in the year of 1946, when I was the assistant circuit attorney in his division, it was his invariable practice to very carefully inquire of not only the attorney but of the defendant about his admission of his guilt of the offense to which he was pleading, and the fact that he had authorized his attorney to enter the plea of guilty; and likewise that he was aware of what the sentence was that was to be recommended by the State, and likewise of the availability to him of a jury trial if he desired it. That was his practice through the years; that was not only from my observation but later on after I had left the Circuit Attorney's Office, on many occasions I represented defendants myself before Judge Aronson and on many occasions entered pleas of guilty. And that was his invariable practice. He was not satisfied with a mere statement of the attorney that he was entering a plea of guilty, but he likewise inquired of the defendant whether

or not he understood and whether or not he had authorized the plea of guilty."

A deputy sheriff testified that after appellant entered his plea of guilty he remarked to fellow prisoners that he would "rather take a life sentence than go to that gas chamber."

The trial court's findings were as follows:

"On September 29th, 1961, the movant Charles Miller Moore entered a plea of guilty to Murder First Degree and to Robbery First Degree by Means of a Dangerous and Deadly Weapon and was sentenced to life in each case. On September 27th, 1969, the defendant filed an amended motion as provided by Supreme Court Rule 27.26, in which it is claimed that the pleas were induced by his attorney, with assurances that he would be eligible for parole in approximately one-third of the balance of his life expectancy; and, 2, that he was not advised that he would be given a double life sentence, nor that the terms would run consecutively; and, 3, the pleas of guilty were induced by coercion and fear and threats of the death penalty; and, 4, his attorney spoke in his behalf, and at no time did he assent to the matters that were mentioned on his pleas of guilty; and, 5, he was not advised of the right of a trial by jury, nor the consequence of his alleged pleas of guilty; and, 6, that he has been unable to get a transcript of the testimony; and, 7, his attorney did not properly investigate the case.

"A transcript of the proceedings held September 29th, 1961, when the movant entered pleas of guilty is unavailable because of the death of the court reporter. The Judge presiding in the division of this court when the pleas of guilty were made and entered, and who assessed the life sentences, the Honorable Robert L. Aronson, is also deceased, as is James Rankin, the attorney who represented movant. The Assistant Circuit Attorney who handled the matter for the State testified that he has no independent recollection of what was

said in court, and this is understandable in view of the lapse of time and the large number of cases handled by assistants to the Circuit Attorney. The only evidence produced in an attempt to prove the charges was the testimony of the defendant, whose testimony was wholly incredible. While he states that James Rankin represented him, he says he didn't employ him but his brother did. Yet he accepted his services. Defendant endeavors to give the impression that Mr. Rankin neglected his case, yet Mr. Rankin entered his appearance for the defendant at the time he was arraigned and advised with his client and also conferred with the defendant's brother. The competency of counsel cannot be determined solely on the basis of the amount of time he spent interviewing his client. (Johnson v. State [Mo.], 442 S.W.2d 41, l. c. 45). Mr. Rankin actually tried the codefendant's case which resulted in the death penalty, and hence was completely advised of the State's case.

"It is obvious the attorney was bending his efforts to save defendant from the death sentence and that the defendant was at the time relieved of facing that end. The possible imposition of the death penalty did not constitute 'coercion.' (Fleck v. State [Mo.], 443 S.W.2d 100).

"The defendant testified that the proceedings in which his pleas of guilty were entered 'took about one half hour.' It is hard to believe that in taking this length of time the Court did not take steps to determine that the defendant understood what he was doing and what the result would be.

"Defendant makes much of an alleged statement by the assistant circuit attorney to the effect, 'This man was not directly involved in the actual killing.' From a reading of the case of State v. Anderson [Mo.], 386 S.W.2d 225, it is clear that this was a reference to the fact that the defendant did not accompany his accomplices in the robbery to the basement where the delivery boy was killed.

"The defendant states he was not advised that he was entitled to a jury trial, yet it is very evident that he knew his co-defendant was given a jury trial which resulted in the death penalty. And he was also advised by his attorney that he could have a jury trial but that he ran the risk of having the death penalty imposed.

"The defendant states that he was promised a parole, yet in his own testimony the defendant brings out that he was told that he would 'be *eligible* for a parole.' This is not a promise of a parole. There is no credible evidence that the Court promised a parole, and it is unbelievable that the late Judge Robert L. Aronson would give assurances of action by the Probation and Parole Board over which he had no control. The defendant further complains that he did not know that life sentences would run consecutively, yet he testified he heard that term. And he also testified that he heard it stated that he was pleading guilty 'on each of the charges of murder and robbery.' He heard this term used, and he heard the charges, and he even recalled the Circuit Attorney's statement.

"It is pointed out that Judge Robert R. Aronson noted in his memorandum of August 27th, 1968, 'that the defendant's plea of guilty was entered one day after his co-defendant Lloyd Leo Anderson was found guilty by a jury and his punishment assessed at death.' It is concluded that this bears out the movant's theory that his plea was induced by fear. It can be said with probably greater force and based on this Court's experience that this persuaded the defendant to avoid a jury trial and quickly 'cop a plea' of guilty rather than run the risk of obtaining the death penalty.

"The defendant's evidence reveals no defense to the charges to which he pleaded guilty, nor has he denied guilt. His testimony is contradictory. He was represented by one who was a leading, competent lawyer in the practice of criminal law. He appeared before a thorough, conscientious and experienced jurist who was noted to

be inquisitive, careful and particular in such matters.

"Over the years the strong desire for freedom forms thoughts which become convictions. Our expectations become promises. We tend to sift through our own conduct and view it in such a manner that we come out looking best. Expectations guide our behavior, and we respond with impressions to make them real.

"The Court finds beyond a reasonable doubt that the defendant has failed to prove the allegations in his motion and has failed to prove that he was denied his constitutional rights and a fair consideration on his pleas of guilty."

■ On this appeal, the findings and conclusions of the trial court are presumably correct and are to be rejected only if they are clearly erroneous. Supreme Court Rule 27.26(j), V.A.M.R. State v. Edmondson, Mo.Sup., 438 S.W.2d 237, 242[2]; State v. Mountjoy, Mo.Sup., 420 S.W.2d 316, 323[4–8]. The trial court's findings will be considered clearly erroneous only if, upon consideration of the entire record, this court is left with a definite and firm conviction that a mistake has occurred. Crosswhite v. State, Mo.Sup., 426 S.W.2d 67, 70–71[1].

On this appeal the primary basis of appellant's contention is that "the court should give greater weight and credit to defendant's testimony, as there is no other evidence before the court." Appellant actually points to no reason for our rejection of the trial court's resolution of the credibility issue other than the fact that appellant's testimony was not directly contradicted. However, appellant's own evidence contained contradictions. For example, on his contention that he did not understand that there were two charges against him, he testified that the circuit attorney recommended a life sentence "on each of the charges." As the trial court pointed out, when it got down to what actually had been said about a parole, the most that Rankin told him was that after serving a

third of his life expectancy, he would be "eligible" for parole. This is not the same as a promise of a parole and there is nothing in the record before us as to appellant's "eligibility" for parole at the time of the hearing.

■ Appellant was understandably concerned about a death sentence after Anderson's trial. By his own admission, he told Rankin, "I wanted anything other than dying in the gas chamber." As the trial court pointed out, a desire to avoid a death sentence does not cause a plea of guilty to be involuntary. Fleck v. State, Mo.Sup., 443 S.W.2d 100. See Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L. Ed.2d 747; North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (October Term, 1970, decided November 23, 1970).

■ The trial court was entitled to consider and give weight to the evidence of Judge Aronson's practice in taking guilty pleas. The unavailability of the transcript of the proceedings, in the circumstances of this case, does not compel the acceptance of appellant's version of the proceedings. State v. Davis, Mo.Sup., 438 S.W.2d 232, 235[5–7]; Meller v. State of Missouri, 8th Cir., 431 F.2d 120, 124. The state's evidence was sufficient to meet the burden which the absence of the record of the proceedings imposed upon the state. Mountjoy v. Swenson, W.D.Mo., 306 F. Supp. 379; Davis v. Swenson, W.D.Mo., 308 F.Supp. 635.

■ There has been no demonstration that the findings of the trial court on the issue of effective assistance of counsel are erroneous. Mr. Rankin was a highly competent criminal lawyer. His conduct of the trial of codefendant Anderson gave him more than adequate opportunity to assess the strength of the state's case. Appellant complains that Rankin did not inquire about his family, social and educational background. He in no manner hints how an inquiry into any of these matters would have provided information relevant to any

defense which might have been offered. The fact that the circuit attorney acknowledged that appellant had not done the actual killing involved did not mitigate the appellant's criminal liability. Mr. Rankin, having conducted the Anderson trial, was well aware of that fact. Nothing but second guessing of the highest order could convict Mr. Rankin of ineffectiveness for failing to insist upon defendant's standing trial on the basis of that different between Anderson's case and appellant's.

Again appellant has pointed out no reason to cause us to consider the trial court's findings on the counsel issue clearly erroneous.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.