**Willie James EVANS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 56245.**

Supreme Court of Missouri,
Division No. 2.

March 13, 1972.

...

Dominic Troiani, Allen S. Boston, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

Appeal by Willie James Evans from an order overruling a motion filed under Criminal Rule 27.26, V.A.M.R., to vacate the convictions and sentences imposed upon

pleas of guilty to first degree murder, first degree robbery and first degree burglary, entered in the Circuit Court of the City of St. Louis on March 26, 1969. Appellant was sentenced to life imprisonment on each of the first two charges and 20 years' imprisonment on the third charge, all sentences to run concurrently.

## I.

Appellant claims that in the 27.26 proceeding the court erred (a) in finding that appellant understood the meaning of a jury trial at the time he pleaded guilty; (b) in finding that appellant was not induced to plead guilty as a result of any promise of parole, and (c) in finding that appellant was not induced to plead guilty because of fear and misapprehension that he would receive the death penalty if he continued with his trial by jury.

■ In contending that the trial court's findings of fact are against the evidence and against the greater weight of the evidence appellant mistakes the scope of appellate review in a 27.26 appeal. Our duty is to determine whether the findings, conclusions and judgment of the trial court are *clearly erroneous*. Criminal Rule 27.26 (j).

That none of the three findings is clearly erroneous is made clear upon a consideration of the transcript of the hearing at which appellant pleaded guilty; the testimony on behalf of the State given by counsel who represented appellant at the original trial; appellant's testimony at the 27.26 hearing, and the circumstance that the pleas of guilty were entered on the third day of the trial before a jury of the charge of murder.

■ With reference to (a) above: appellant learned to understand the meaning of a trial by jury by participating in one through the voir dire examination and the State's case in chief, experiencing jury trial at first hand during three days in court. He interrupted the jury trial, according to his counsel, in order that he might enter the pleas of guilty. After this exposure to a jury trial appellant may not be heard to say that he did not understand the meaning of a jury trial when he pleaded guilty. Not only was appellant given a personal introduction to trial by jury, but the transcript of the hearing at which appellant pleaded guilty to first degree murder shows that the sentencing judge elicited from appellant the fact that he realized that he had a right to a full and complete trial by jury if he so desired; that appellant stated twice that he was waiving his right to a full trial by jury; understood what waiving a jury meant, and that the judge satisfied himself that appellant had been advised by counsel as to his right to trial by jury. The same questions were repeated and appellant reiterated his understanding of his right to trial by jury twice more when arraigned on the other two charges. During the three hearings the judge asked appellant and his counsel a total of eighteen questions relating to appellant's understanding of his right to have his cases fully heard by a jury. Appellant's trial counsel kept appellant informed throughout the first three days of the jury trial of the significance of the court's rulings on excusing veniremen, on the admissibility of the confession, other evidential rulings, the prospects of the jury finding him guilty and assessing the death penalty, and while they advised entering a plea of guilty they informed appellant that they were willing to continue with the trial and allow the jury to reach a verdict and determine his guilt. Appellant's testimony at the 27.26 hearing indicates clearly that he understood what was going on at the trial; that he appreciated and understood the function of the jury, and that his counsel conferred with him frequently during the three-day period with reference to his prospects at the hands of the jury. The court made no error in finding that appellant understood the meaning of his right to trial by jury. Any other finding on this issue would have been clearly erroneous.

As to (b) above: Appellant and his mother testified that his counsel told him that he should plead guilty and "snatch life, and * * * do about two or three years and make parole," and his mother testified that counsel told her that "if he would plead guilty he said he would get around about three or four years on behavior if he be good." The trial court, however, was not required to and did not believe this testimony, branding it "totally unfounded." Instead, the trial court accepted the testimony of appellant's counsel that he advised appellant that if he took life he would be "subject to a parole after an undetermined period of time"; that parole would or could be "considered." Under the latter testimony Finding (b) above was not clearly erroneous.

Concerning (c): There was a conflict in the evidence on whether appellant's counsel advised him to plead guilty whether guilty or not because if he went through with the trial the jury *would* find him guilty and *would* give him the death penalty. The trial judge rejected appellant's testimony and that of his mother to this effect and accepted the testimony of trial counsel that after their motions to suppress the confession and other evidence were overruled and their defense strategy was thus hamstrung they advised appellant to plead guilty, stating that there was a chance that he would be convicted and a chance—a possibility—that the jury would assess the death penalty; that counsel did not tell appellant that the death penalty was a certainty or even a likelihood; that if he did not commit the crime he could not plead guilty. From the evidence the court could reasonably infer that appellant made an independent decision to reverse his plea of not guilty and plead guilty, after considering the advice of counsel and conferring with his mother. Having determined that appellant stood in danger of being convicted and of receiving the death penalty it was the duty of counsel to advise appellant of the danger and recommend that he plead guilty and take the lesser pen-

alty of life imprisonment, if no further reduction of the charge could be obtained. "The dilemma confronting a person charged with first degree murder (whether to plead guilty in the expectation that he would receive a life sentence or stand trial and risk possible imposition of the death penalty) 'does not amount to coercion [or inducement] of the sort which means that his plea of guilty is coerced [or induced] and subject to collateral attack.' Fleck v. State, Mo.Sup., 443 S.W.2d 100, 103, and cases cited." (Our brackets.) Richardson v. State, Mo.Sup., 470 S.W.2d 479, 484; Moore v. State, Mo.Sup., 461 S.W.2d 881; Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747; Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785. As indicated in Brady v. United States, supra, a guilty plea is not invalidated because it is motivated by the defendant's desire to take the lesser penalty instead of taking a chance on receiving the extreme penalty. Finding (c) was not clearly erroneous.

## II.

Appellant asserts that the trial court failed to make findings of fact and conclusions of law on the issue relating to the alleged failure of the sentencing court to determine whether the guilty pleas were intelligently and voluntarily made; whether the court ascertained whether appellant "fully understood the consequences of his pleading guilty to the three charges." The following excerpts from the trial judge's findings demonstrate that this contention is not well taken: "The movant entered his plea of guilty after two days of trial during which both counsel * * * advised him and explained to him his rights, and also explained the meaning of the trial, further explained what the withdrawal of a not guilty plea and the entering of a guilty plea to the charge of Murder First Degree and the possible consequences and resulting possible sentence which may be meted out to the defendant on his plea of guilty. In addition, the movant also had the opportunity to witness the actual pro-

ceedings for two [sic] days as to what a jury trial consisted of. It was thoroughly explained that should he desire he had the right to continue with the jury trial; and he was fully cognizant and made aware of the fact he may elect to require the State to prove its case; that he could present evidence on his own behalf and if found guilty his punishment would be assessed by the jury rather than by the judge. By his own admissions, movant was aware of all these rights. Movant's attorneys * *, recognized as very competent counsel, painstakingly explained the possible consequences of withdrawing his former plea of not guilty and entering a plea of guilty. Also, counsel explained the range of punishment in Cause No. 1336–Q being either a life sentence or a possibility of a death sentence by the jury. * * * Defense attorneys had a duty, and upon the testimony and evidence did explain to movant the possible consequences of a trial as well as plea of guilty. * * * Movant was thoroughly advised of the consequences of a plea of guilty in 1334–Q to the charge of Robbery First Degree By Means Of a Dangerous and Deadly Weapon, the range of punishment, and examined as to whether or not he understood the charge and the consequences of his withdrawal of a plea of not guilty and entering a plea of guilty. In Cause No. 1335–Q, Burglary First Degree, the range of punishment was explained to movant by his counsel, and movant was examined as to his plea of guilty. * * * [T]he constitutional rights of the movant were in no way violated in the acceptance of his pleas of guilty in Cause Nos. 1334–Q, 1335–Q and 1336–Q * * *."

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

MORGAN, P. J., HENLEY and DONNELLY, JJ., and SMITH, Sp. J., concur.