Charles Miller **MOORE**, Petitioner,

v.

Harold R. **SWENSON**, Warden,
Respondent.

No. 71 C 231(2).

United States District Court,
E. D. Missouri, E. D.

June 5, 1973.

Gerald R. Ortbals, St. Louis, Mo., Appointed Counsel, for petitioner.

John C. Danforth, Atty. Gen., and Kenneth M. Romines and Stephen Hoyne, Asst. Attys. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM OPINION AND ORDER

REGAN, District Judge.

This petition for a writ of habeas corpus is here on transfer from the Western District of Missouri. Petitioner is presently serving two consecutive terms of life imprisonment imposed by the Circuit Court of the City of St. Louis September 29, 1961, upon petitioner's pleas of guilty to separate charges of first degree murder and robbery first degree by

means of a dangerous and deadly weapon.

The charges against petitioner stemmed from an armed robbery at a drugstore by three men, during the course of which a delivery boy was killed without the slightest provocation. Petitioner and his nephew, Lloyd Leo Anderson, were jointly charged with the crimes. A third participant in the robbery had theretofore been killed in an exchange of shots with police officers attempting to arrest him. A more detailed statement of the crimes appears in the opinion of the Missouri Supreme Court affirming Anderson's conviction on the murder charge. State v. Anderson, Mo., 386 S.W.2d 225.

Petitioner was represented by James Rankin, an attorney with extensive experience in the field of criminal law, who had been employed by petitioner's brother to defend both petitioner and Anderson. Rankin appeared with petitioner at his preliminary hearing as well as at his arraignment on June 16, 1961, when pleas of not guilty were entered. Following a severance, Anderson was first tried for murder, with Rankin as trial counsel. On September 28, 1961, the jury assessed Anderson's punishment at death. The following day petitioner appeared before Judge Robert Aronson, withdrew his pleas of not guilty and entered pleas of guilty and thereupon the sentences complained of were imposed. Anderson was subsequently executed.

On August 12, 1968, approximately seven years after the convictions and with information (but no firm knowledge) that Rankin was then dead, petitioner filed a pro se motion requesting certified copies of his "plea of guilty proceedings." In this motion, in which he indicated his ultimate intention to proceed under the Missouri post-conviction remedy provided by Missouri Supreme Court Rule 27.26, V.A.M.R., petitioner stated

"It is the contention of your defendant that by virtue of the indictments being fatally defective and defendant

at time of the plea of guilty proceedings was not aware of the defective indictments, he should be allowed copies of such records for the purpose of establishing the authenticity of his claims and allegations and the Court would thus know this is not a frivolous matter."

On August 12, 1968, Judge Aronson sustained petitioner's motion only to the extent that he be sent certified copies of the indictments, and denied the motion in other respects "because motion shows no sufficient reason for any other documents and no action is pending in which such documents might be used." Immediately upon receipt of the copies of the indictment, petitioner wrote to the Clerk of the Court stating that he had been informed sometime before that Mr. Rankin had passed away but was not certain. The Clerk replied on August 16, 1968, verifying the fact of Rankin's death and enclosing another copy of Judge Aronson's order.

Under date of August 21, 1968, petitioner prepared a motion for "reconsideration" of Judge Aronson's order denying him a copy of the "plea of guilty proceedings." In the latter motion, petitioner urged that such transcript was necessary in order to enable him to file a Rule 27.26 motion and comply with the requirement of the Rule that he set forth every ground known to him. He stated that since the burden was placed upon the prisoner to establish the grounds alleged, "(t)his cannot be done on only the memory of the prisoner." As demonstrating his need for the transcript, he stated "(d)efendant points out that he did not plead guilty voluntarily but was coerced, involuntarily influenced, subtly threatened by 'The Public Sentiment is against you', and 'that could mean the "gas house." ' ", and that *since petitioner could not be expected "to recall all the events and circumstances surrounding his pleas of guilty"*, "he should be provided with the necessary parts of his plea of guilty proceedings."

Judge Aronson then sustained the motion for reconsideration and ordered Ray Harness, his court reporter, to prepare a transcript of the sentencing proceedings. In an accompanying memorandum Judge Aronson noted that "a problem exists in connection with any order for the preparation of transcript of proceedings in 1961 by reason of the ill health of our retired Official Court Reporter, Mr. Ray Harness. This reporter who retired in 1964 is a man of advanced age and poor health. He is attempting to transcribe his notes and to prepare a full transcript of a trial in another case and his work necessarily proceeds slowly. It is doubtful that he can complete the earlier order within the next thirty days, and although the transcript in this case will be brief, it will have to follow the other order."

Unfortunately, Mr. Harness died on December 18, 1968, on the morning after he filed the transcript to which Judge Aronson had adverted in his memorandum, and thereupon Judge Aronson undertook to ascertain whether any other court reporter would be able to transcribe Mr. Harness' notes of the plea and sentencing proceedings. In spite of Judge Aronson's efforts he was unable to locate any reporter who could transcribe the notes and he so advised petitioner under date of February 25, 1969, concluding his letter with the statement, "Therefore I must advise you that it is impossible, due to the death of Mr. Harness, to comply with your request for a transcript of the proceedings on your plea of guilty in 1961."

One month later, March 25, 1969, petitioner filed a motion under Missouri Supreme Court Rule 27.26 which was assigned to Judge Aronson, and counsel was appointed to represent petitioner. Judge Aronson died before the matter could be heard, and on June 19, 1969, the case was assigned to Judge David McMullen. Thereafter, appointed counsel filed an amended motion in which, inter alia, petitioner specifically charged for the first time that the sentencing judge (Aronson) had not made adequate inquiry to determine whether the pleas were completely voluntary and that the judge had not fully advised him of his rights.[1]

A full and fair evidentiary hearing, at which the material facts were apparently adequately developed, was held before Judge McMullen. As indicated, no transcript of the proceedings of December 29, 1961, was available for use because of the death of Harness and the inability of other reporters to decipher his notes. Upon a consideration of all the evidence, including the testimony of petitioner, and an appraisal of the credibility of the witnesses, Judge McMullen made reliable findings of fact and on the basis thereof denied petitioner's Rule 27.26 motion. The court's findings are set forth in the opinion of the Missouri Supreme Court affirming Judge McMullen's order. Moore v. State, Mo., 461 S.W.2d 881, 884–886.

The basic thrust of the present petition is that the guilty pleas were not made knowingly and intelligently. Other contentions interwoven with the principal one are that petitioner did not know the nature of the accusations against him, that he was not advised of the consequences of his pleas, that he had ineffective representation of counsel, and that his pleas were induced by promises of leniency and intimidation.

Because of the deaths of the attorney for petitioner, the sentencing judge and the court reporter, and the inability to obtain a transcript of the proceedings of the pleas and sentencing, a resolution of petitioner's credibility is vital. For that reason we deemed it desirable, in the exercise of our discretion, to hold an evidentiary hearing additional to that accorded petitioner in the state court.

---

1. Significantly, McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 was decided April 2, 1969. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 had also been decided prior to the filing of the amended motion.

Were the guilty pleas made knowingly, intelligently, and with knowledge of the consequences? We hold, as did Judge McMullen, following the state court hearing, that the pleas were voluntary.

Petitioner relies on Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L. Ed.2d 274 decided June 2, 1969. That case holds that where the record at a plea of guilty fails to affirmatively disclose that the defendant voluntarily and understandingly entered the plea, the conviction should be reversed, inasmuch as waiver of a defendant's federal constitutional rights cannot be presumed from a silent record. Boykin "establish-es a prophylactic per se rule invalidating the plea if the record is silent (as to whether the plea of guilty was knowingly and voluntarily made)". United States ex rel. Sadler v. Commonwealth of Pennsylvania, 3 Cir., 434 F.2d 997, 999.

■■ However, petitioner was convicted in 1961, and Boykin is not to be given retroactive effect. See Crosswhite v. Swenson, 8 Cir., 444 F.2d 648, 650, Meller v. State of Missouri, 8 Cir., 431 F.2d 120, 124, and Sadler, supra. Hence, the absence and unavailability of a transcript of the proceedings through no fault of the State, a situation wholly unlike that in Boykin, may not be used to convict Judge Aronson of failing to comply with the requirement that he determine the voluntariness of the pleas and the existence of a factual basis therefor, as well as petitioner's awareness of the consequences of the pleas. This is particularly true in view of the long delay of the petitioner in seeking a copy of the transcript. Cf. Norvell v. Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L. Ed.2d 456.

■ Petitioner urges that at the very least the absence of a transcript should operate to shift the burden of proof to the State, citing United States ex rel. McCloud v. Rundle, 3 Cir., 402 F. 2d 853 and other Third Circuit cases following McCloud. That case has since been overruled in United States ex rel. Grays v. Rundle, 3 Cir., 428 F.2d 1401, 1404, holding that a plea of guilty entered with the advice of counsel is presumptively valid and the burden is on the habeas corpus applicant to show that the plea was not knowingly and voluntarily made. The burden therefore remained upon petitioner to prove his belated claim. However, our ruling would be no different were the burden to be cast on the State. The evidence convincingly shows that petitioner entered his guilty pleas voluntarily and with knowledge of the nature of the charges against him, of his rights with respect thereto, and of the consequences of the pleas.

The evidence shows that the proceedings at which the pleas of guilty were entered took at least half an hour. As Judge McMullen commented, "(i)t is hard to believe that taking this length of time the Court did not take steps to determine what he was doing and what the result would be." He also pointed out that Judge Aronson was a thorough, conscientious and experienced jurist who was noted to be inquisitive, careful and particular in such matters.

The long lapses of time between the entry of the pleas and the hearings both on the Rule 27.26 motion and in the petition in this Court necessarily posed a memory problem both for petitioner and for the State. For the State, there is evidence, which we credit, that it was the invariable practice of Judge Aronson to make careful inquiry and comments addressed to a defendant personally for the purpose of ascertaining whether the defendant knew he was entitled to a jury trial and knew the range of possible penalties that might be imposed and whether the defendant was in fact guilty of the offense and after consultation with his attorney had authorized the plea of guilty.

Certainly, petitioner is not to be faulted by the deaths of his attorney, the court reporter and the judge. Nevertheless, in the circumstances of this case, the times of such deaths is of more than minimal significance. As petitioner be-

came aware of each such death, his "memory" improved. But even so, much of petitioner's testimony is contradictory. However, it is clear from his testimony that he knew he was charged with the separate crimes of murder and robbery and that he was aware of his right to jury trials. That petitioner was in fact guilty of the offenses is not disputed by him. He knew that his co-defendant Anderson had received the death penalty on the murder charge and he was "amazed," not because that penalty was not warranted but because Anderson was "only a 17-year old boy," a factor which would have no application to petitioner. Petitioner also knew that a life sentence was the only alternative to death on the murder charge and that a death sentence could be imposed under the law for the crime of robbery first degree by means of a dangerous and deadly weapon. And when asked by Judge Aronson if he knew what he was doing by pleading guilty he responded affirmatively.[2]

█ It is now well settled that a guilty plea to escape the death penalty is not of itself involuntary. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, and Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. And since petitioner knew he had no chance of acquittal (and in light of the fact that Anderson had already been given the death penalty), he decided that it was in his best interest, following the advice of his counsel and the urgings of his family, to plead

guilty and limit the probable penalty on the two offenses to one short of death.[3]

There were no threats or other coercive tactics on the part of either the judge, the attorney or the prosecutor. There is no contention that Judge Aronson had made any promises respecting the sentences nor that Rankin had represented to petitioner that such promises had been made. What petitioner now claims is that his attorney "promised" him that he would be paroled after serving one-third of his life expectancy,[4] in this respect changing his state court testimony at which he had said that Rankin had merely told him that he would be *eligible* for parole.[5]

We do not credit petitioner's testimony that Rankin made a promise either that he would be eligible for a parole or that he would be paroled. In our judgment petitioner, knowing that he had participated in and was in fact guilty of both crimes and had no defense to the charges, intentionally waived his right to trials by jury and all the other constitutional rights incident thereto, fully aware of the range of penalties, including that of death, for each offense, and voluntarily and intelligently entered his pleas of guilty.

█ Petitioner's claim of ineffective representation by counsel rests on his contention that Rankin did not sufficiently investigate the charges and petitioner's background or discuss the facts of the case with petitioner. He also contends that Rankin did not fully ad-

2. In the State court hearing petitioner testified that he both nodded his head and said "Yes." At the habeas corpus hearing having had time to consider the effect of his state court testimony he modified his answer by "remembering" that he had not spoken but had merely nodded his head when nudged by his attorney. Petitioner's memory improves with the years. In his testimony petitioner further conceded that in 1961 (when the pleas were entered) he "would have done anything to avoid the gas chamber."

3. With tongue in cheek he testified at the habeas hearing that knowing what he does

now (apparently that the death penalty has in fact been outlawed, Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346), he would not have entered the pleas.

4. Petitioner's original pro se Rule 27.26 motion made no allegation whatever of *any* promise by Rankin respecting a parole.

5. Petitioner testified at the state hearing that he was in fact *eligible* to apply for parole on his first life sentence after *five* years confinement. There is no contention that the imposition of consecutive life sentences would preclude parole.

vise him of the consequences of a plea of guilty.

We have no way of knowing the extent of the factual investigation made by Rankin. We do know, of course, that Rankin obtained severances in both cases and that he had tried the Anderson murder charge to a conclusion, so that unquestionably he was informed as to strength of the State's cases. In addition to conceding that the facts in his own case were the same as those in Anderson's, petitioner testified that he had personally purchased and sawed off the shotgun used in the robbery, and that he had made a confession respecting his participation in the crimes. We have no doubt that Rankin was apprised of the foregoing. We simply do not believe petitioner's testimony that Rankin was not made aware of his "background," including the fact that petitioner, a 36 year old black man, had completed only a sixth grade education by the age of 17, was divorced and had one child. However, petitioner admittedly was no stranger to the criminal courts, having a record, so he testified, of convictions on gambling charges.

Petitioner has wholly failed to inform us either in his pleadings, memoranda or testimony as to what, if any, "background" information would have been helpful in the defense of the crimes or which, if known to Rankin, would have caused him to advise against pleading guilty. Conscious of his guilt, and with the knowledge acquired from Anderson's sentence that the death penalty was more than a remote, academic possibility, petitioner was willing to accept any alternative punishment, whatever the length of the sentence. In his original Rule 27.26 motion he specifically stated that he told Rankin that "he wanted *anything* other than to die in the 'gas chamber'." We find that petitioner was effectively represented by competent counsel.

There can be no question whatever that petitioner's solemn admission of guilt of the crimes charged against him was truthful, and the evidence against him on both charges was overwhelming and uncontradicted. Petitioner voluntarily pleaded guilty on advice of competent counsel, fully aware of the consequences of his pleas. None of his constitutional rights were violated.

Accordingly, petitioner is not entitled to the writ and his petition for a writ of habeas corpus should be and it is hereby denied.