Terry Maurice **DABBS**, Movant-Appellant,

v.

**STATE of Missouri, Respondent.**

No. 9324.

Missouri Court of Appeals,
Springfield District.

Dec. 28, 1972.

Charles M. Cable, Kennett, for movant-appellant.

John C. Danforth, Atty. Gen., Allan D. Seidel, Asst. Atty. Gen., Jefferson City, for respondent.

TITUS, Chief Judge.

■ Terry Dabbs appeared with counsel August 23, 1971, in the Circuit Court of Pemiscot County and pleaded guilty to exhibiting a dangerous and deadly weapon. § 564.610.[1] He was sentenced to five years and paroled without supervision. The parole was revoked August 30, 1971, whereupon Dabbs was confined in the Missouri Department of Corrections at Jefferson City. Before us now is Dabbs' appeal (as movant-appellant) from the order overruling a Rule 27.26 motion (filed September 22, 1971) to vacate the judgment and sentence. The order was made following a full evidentiary hearing before a special judge; movant was represented by counsel of his choice. In his pro se motion, Dabbs alleged that he had been "denied and deprived the right of effective service of legal counsel" and that his plea of guilty was involuntary because he did not understand the nature of the charge against him and because he was under pressure "due to family troubles and was in a confused state of mind."[2] The scope of the motion was broadened by the indulgence of the special trial judge at the hearing so that, according to appellant's brief prepared by his counsel "[t]he sole question [on appeal] is whether or not [the] plea of guilty . . . was voluntary or was the result of [mental] duress, coercion, and persuasion."[3]

The evidence indicates the 35-year-old movant had frequent and numerous adverse encounters with the law, including a three-year sentence in the Arkansas State Penitentiary "on a charge of obtaining personal property by false pretenses and violation of the hot check law." Prior to July 1971, Dabbs had been admitted to bail on four felony charges then pending in the Circuit Court of Pemiscot County. The charges and the amount of bond on each were described as (1) burglary and larceny, $15,000; (2) cheat and defraud, $1,000; (3) grand larceny, $5,000; and (4) the charge to which he pleaded guilty, exhibiting a dangerous and deadly weapon, $5,000. Also pending against movant in the Pemiscot County Circuit Court was a misdemeanor charge of "public drunk" for which no bond had been required. His mother was the lone surety on all of these bonds.

After the crime had been committed to which movant later pleaded guilty, he was charged with a like offense. This was dismissed, however, upon the request of the complaining witness. Shortly before July 1, 1971, movant was picked up on a charge of "suspicion of burglary" filed against him by the State of Louisiana; three days thereafter he was freed on another $5,000 bond presumably provided by his mother. It was stipulated that if Dabbs' ex-wife had been present at the hearing on the Rule 27.26 motion, she would testify that shortly before the first of July 1971, she reported or had reported to the Circuit Judge of Pemiscot County that Dabbs had threatened to kill the judge or have him killed. The prosecuting attorney testified he had been informed the threat included the sheriff and himself, in addition to the judge. Dabbs did not deny having made such a threat. In any event, on July 1, 1971, the court ordered the bonds doubled

1. References to statutes and rules are to RSMo 1969, V.A.M.S., and Missouri Supreme Court Rules of Criminal Procedure, V.A.M.R.

2. None of these allegations were supported by the evidence; neither have they been briefed in any manner. Consequently,

they are not to be considered by us on review. McQueen v. State, Mo. (banc), 475 S.W.2d 111, 115(3).

3. There was no contention that movant had ever been subjected to physical abuse, duress, coercion or persuasion.

on the four felony charges then pending in the Circuit Court of Pemiscot County and fixed bail on the misdemeanor charge at $10,000. Rule 32.06. This resulted in movant's arrest and incarceration for want of $62,000 in bonds. Dabbs did not undertake to get the bonds reduced, a procedure permitted by Rule 32.08, and his mother stated she had not attempted "to make a bond again for him" because the prosecutor "said I couldn't make his bond." The prosecuting attorney agreed "I may have" so stated to movant's mother for the reason "that she is on a number of bonds already."

Dabbs and his lawyer appeared before the court July 7, 1971, on the State's motion for mental examination (§ 552.020), which movant's counsel did not oppose. Following a colloquy of all concerned anent movant's many legal problems and difficulties, the judge observed that Dabbs' conduct suggested "either chronic alcoholism or a mental defect." When asked for his thoughts on the subject, Dabbs replied: "I have a drinking problem. I just drink too much, and that's all there is to it." Dabbs' examination was conducted at the Missouri State Hospital at Fulton; the results were that "there are no indications that the patient is or was suffering from a mental disease or defect at the time of the alleged crime [of flourishing a dangerous and deadly weapon] until the present. . . . He is well aware of the possible sentence. . . . He is able to cooperate with counsel and does know and appreciate the nature, quality and wrongfulness of his conduct. He is well versed in legal procedures, having been in court before."

According to movant's testimony, he was advised the judge, on a guilty plea to exhibiting a dangerous and deadly weapon, "would accept five years out of the state," and that this misdemeanor charged would be dropped. Nothing was said of the other three felony cases or the bonds set on those charges. When asked concerning what Dabbs was told regarding a trial on the charge if he decided not to plead guilty, movant said he was informed "it might be a month or it might be two months or it could be a year *if I want it to be.*" (Our emphasis). The prosecuting attorney testified that in a conversation he had with Dabbs "before his entering a plea of guilty [movant was advised] that he was not compelled to enter a plea . . . and to enter a plea of guilty on the hopes of getting a parole was not necessarily the best way nor the easiest way out; that it is very difficult to live under parole . . . and be in Pemiscot County because of his friends and his associates and his past history. In fact I think I tried to talk him out of entering a plea."

In summary, Dabbs concludes he was subjected to duress and coercion because "there was no way" he could make the increased bonds and this resulted in his thinking his "position in the jail was hopeless . . . I had been there so long it looked like I was going to stay there and I got tired being there and so I decided to plead guilty and get out of the state." He contends the persuasion came about through the promise of freedom by way of an unsupervised parole, coupled with the assurance the misdemeanor charge would be dropped. The findings of fact prepared by the special judge in this case assessed movant's situation in jail to be no more coercive than that of any other incarcerated defendant awaiting trial and concluded: "As to the matter of the increase in the amount of bail bond on this charge [of exhibiting a dangerous and deadly weapon] and on the other charges which were pending against the defendant at that time, there are multiple factors which the Court shall consider in determining and fixing a proper amount as bail bond. The weight given to any of those factors will of course vary from case to case. Certainly one of those factors is the propensity of a defendant to continue in a lawless manner while awaiting a final disposition of a criminal charge. The conduct of this defendant prior to the Court increasing the amount of bond on each charge indicates that there

was no abuse of discretion by the Court on this matter."

Bail is not excessive merely because a defendant is unable to secure it (Koen v. Long, E.D.Mo., 302 F.Supp. 1383, 1391(8), aff'd 8 Cir., 428 F.2d 876, cert. denied 401 U.S. 923, 91 S.Ct. 877, 27 L. Ed.2d 827), and the procedure provided by Rule 32.08 (and subsequently habeas corpus if that was unsuccessful) was available to movant to quickly and efficiently enforce the applicable rules regarding bail if he felt the bonds set on the four felony and one misdemeanor charges were excessive. If movant pleaded guilty to one of the felony charges in a desire to simply avoid further incarceration brought about by his own conduct or unwillingness to pursue any course to obtain another surety or reduction of the bonds, or a combination of all three, such motive would not be sufficient to show that his plea resulted from coercion and duress or that it was involuntary. Geren v. State, Mo., 473 S.W.2d 704, 706(2). Furthermore, we are clear to the view that movant's plea was not induced by any external persuasion. Should the prosecutor's testimony that he tried to dissuade movant from pleading guilty be totally ignored, we still have appellant's own testimony that the report allegedly made to him as to what the court and prosecutor would do if he pleaded guilty (which proved to be true) was made as a take-it-or-leave-it proposition with no persuasion involved. A guilty plea is not deprived of its voluntary character because it may have resulted from bargaining [Pulliam v. State, Mo., 480 S.W.2d 896, 904(5)], and a statement in appellant's brief that the plea resulted from persuasion when it is not supported by the transcript, cannot be considered on appeal. Kansas City v. Bradley, Mo.App., 420 S.W.2d 68, 72(6).

A transcript of the August 23, 1971, proceeding was entered as an exhibit in this case. It shows the following: "The Court: . . . Let the record show that on May 18th, the defendant waived formal arraignment and entered a plea of not guilty . . .. Mr. Luber, your client stands charged with the crime of exhibiting a dangerous and deadly weapon. What does he say? Mr. Luber: My client wishes to plead guilty. The Court: He waives formal arraignment and enters a plea of guilty. Is that right? Mr. Luber: Yes, sir. The Court: Is that right, Terry Dabbs? Defendant Dabbs: Yes, sir. The Court: Do you understand the charge against you? Defendant Dabbs: Yes, sir. The Court: You understand that you have a right to a trial by Jury if you want one? Defendant: Yes. The Court: You choose not to be tried and you choose to enter a plea of guilty at this time. Is that correct? Defendant Dabbs: Yes, sir. The Court: What do you recommend, Mr. Prosecutor? Mr. Stephenson: Five years confinement in the Department of Corrections, Your Honor. The Court: You are moving at this time for a parole, Mr. Luber? Mr. Luber: Yes, sir, Your Honor. We request parole for the defendant. . . . Mr. Stephenson: . . . The State does not oppose parole for the defendant. The Court: Terry Dabbs, do you have any legal reason to show why sentence should not be passed at this time? Defendant Dabbs: No, sir. The Court: Do you have anything to say, Mr. Luber? Mr. Luber: No, sir. The Court: You are sentenced to five years in the Department of Corrections and granted a parole without supervision. That is all."

The attorney who appeared with movant at the time the plea was entered August 23, 1971, had been representing him either in a hired or appointed capacity since April 1971. This attorney, as the record shows, was present when movant pleaded guilty. At the evidentiary hearing the attorney recounted that prior to the plea he had discussed the matter with his client, cautioned him concerning what a parole meant, informed him of the maximum and minimum sentences possible and advised him of his rights. In the attorney's own words: "I told him previously and I am sure from his

history that he knew of his rights." Although the proceedings in the circuit court at the time the plea was entered may not have been as meticulously complete as those suggested in Flood v. State, Mo., 476 S.W.2d 529, 535–536, when that record is augmented with the testimony of movant's counsel at the hearing on the Rule 27.26 motion, there was ample evidence to justify the finding that the plea was understandably, knowingly and voluntarily given. Schuler v. State, Mo., 476 S.W.2d 596, 597(3).

Movant had the burden of establishing the facts upon which he sought relief (Hodge v. State, Mo., 477 S.W.2d 126, 127), and the scope of our appellate review is limited to determining whether the findings, conclusions and judgment of the trial court are clearly erroneous. Rule 27.-26(j); Evans v. State, Mo., 477 S.W.2d 94, 96(1); Carter v. State, Mo., 472 S.W.2d 370, 372. Having concluded such findings, conclusions and judgment are not clearly erroneous, the judgment is affirmed.

STONE and HOGAN, JJ., concur.